UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ROY JENKINS,

                                        Plaintiff,                    21-CV-03162 (SN)

                    -against-                                        OPINION AND ORDER

KILOLO KIJAKAZI,

                                        Defendant.

-----------------------------------------------------------------X

SARAH NETBURN, United States Magistrate Judge:

        Roy Jenkins seeks judicial review of the final determination of the Commissioner of

Social Security (the "Commissioner") denying his application for disability insurance benefits

("DIB") under Title II of the Social Security Act. See 42 U.S.C. § 405(g). Jenkins moved, and

the Commissioner cross-moved, for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure. The Commissioner's motion is GRANTED, and the Plaintiff's

motion is DENIED.

## BACKGROUND

### I.      Administrative History

        Jenkins applied for DIB on June 24, 2019. ECF No. 9, Administrative Record ("R.") 17,

63. He alleged that he was disabled beginning January 1, 2009, due to Graves' disease, a thyroid

condition, and depression. R. 64. His application was first denied on September 12, 2019, and

then again upon reconsideration on December 5, 2019. R. 76, 84. Jenkins then requested a

hearing before an administrative law judge ("ALJ") to review his case. R. 91-93. Jenkins

appeared *pro se* before ALJ Robert Gonzalez for a hearing on April 28, 2020, and again for a

supplemental hearing on August 21, 2020. R. 111, 142. The ALJ issued a decision denying the

claim on September 9, 2020. R. 14. On March 12, 2021, the Appeals Council denied Jenkins's

request for review, making the ALJ's decision final. R. 1-3.

## II.    Jenkins's Civil Case

Jenkins, through counsel, filed his complaint on April 12, 2021, seeking review of the

ALJ's decision. See ECF No. 1. He requests that the Court vacate the decision and remand the

case for further proceedings. ECF No. 11, Plaintiff's Memorandum of Law ("Pl. Br.") at 10. The

Commissioner answered by filing the administrative record, and the parties cross-moved for

judgment on the pleadings. See ECF Nos. 9, 10, 15. Jenkins argues that the ALJ failed to fully

develop the record, and that he erred in finding that Jenkins did not have a severe impairment

and in failing to consider the effect of any impairments on Jenkins's ability to work. Pl. Br. at 7-

9. The Commissioner responds that the record was adequately developed, and Jenkins failed to

demonstrate a severe impairment. See ECF No. 16. Defendant's Memorandum of Law ("Def.

Br.") at 6-13.

The Honorable John G. Koeltl referred this case to my docket and the parties consented

to my jurisdiction, pursuant to 28 U.S.C. § 636(c). ECF Nos. 13, 14.

## III.    Factual Background

Jenkins was born on June 7, 1959, and was 51 years old at the time of the alleged onset of

his disability in 2009. R. 64. In 2003, Jenkins was diagnosed with colon cancer, for which he

underwent surgery and made a full recovery. R. 46-47, 393. On May 1, 2008, Jenkins saw Dr.

Daniel Miller, who noted that Jenkins was "generally well" but "still not working" and that while

he "occasionally feels depressed" he was "applying for work." R. 345. On December 23, 2008,

Jenkins saw Dr. Miller again, having made the appointment because he believed he might be

losing weight, but by the day of the visit he was no longer concerned. R. 256-57. Jenkins had

multiple follow up appointments with Dr. Miller throughout 2009, during which no significant

issues were noted. R. 359-64. During his October 20, 2009 appointment, Dr. Miller noted that,

despite presenting with a mild cough, Jenkins appeared "generally well." R. 363. On January 1,

2009, Jenkins saw podiatrist Dr. Payam Rafat, complaining of callouses on his feet. R. 358. Dr.

Rafat advised Jenkins that he might need new shoes. R. 358. In 2016, Jenkins was diagnosed

with Graves' disease. R. 530, 48. On July 19, 2019, Jenkins saw Dr. Ivan Herstik regarding foot

pain and callouses, and was diagnosed with plantar fascial fibromatosis. R. 418-424.

Jenkins's testified before the ALJ that he was depressed following his 2003 colon surgery

and more recently following his mother's death in April of 2020. R. 53-54. According to a letter

dated June 10, 2020, from licensed clinical social worker Ruth Warwick, he is diagnosed with

adjustment disorder and major depressive disorder and has been in treatment since October 10,

2019. R. 552. The Court further adopts the parties' recitations of Jenkins's medical record

evidence. See Pl. Br. at 4-5, Def. Br. at 2-3.

## IV.   The ALJ's Decision

The ALJ found Jenkins last met the insured status requirements of the Social Security Act

on September 30, 2010 (the date last insured or "DLI"). At step one, the ALJ determined that

Jenkins had not engaged in any substantial gainful activity between the alleged onset date

("AOD") of his disability on January 1, 2009, and the DLI. R. 19.

At step two, the ALJ found that Jenkins had two medically determinable impairments

during the period between the AOD and DLI: "status post colon cancer" and "foot callouses." R.

19. The ALJ went on to conclude that these impairments did not significantly limit Jenkins's

ability to perform basic work-related activities and were thus not severe. Id. Because the ALJ

found no severe medically determinable impairment or combination of impairments, his analysis ended at step two. See id.; 20 C.F.R. § 404.1520(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.").

In finding no severe impairment or combination of impairments during the relevant period between January 1, 2009, and September 30, 2010, the ALJ noted that while Jenkins had colon cancer in 2003, both his medical records and his own testimony indicated that it was "essentially resolved by several years prior to the onset date and did not recur" and therefore "did not have more than a minimal effect on [his] ability to perform work-related activities . . . ." R. 21. Similarly, the records relating to his podiatric care during the relevant period indicated that the treatment of his foot calluses was "fairly sporadic and conservative" with "no substantial evidence of meaningful ongoing symptoms." Id.

## DISCUSSION

### I. Standard of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An ALJ's determination may be set aside only if it is based upon legal error or it is not supported by substantial evidence. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cr. 1998)).

"Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362

F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The

Commissioner's findings as to any fact supported by substantial evidence are conclusive. Diaz v.

Shalala, 59 F.3d 307, 312 (2d Cir. 1995); see also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir.

1990) ("Where there is substantial evidence to support either position, the determination is one to

be made by the factfinder."). Therefore, if substantial evidence supports the ALJ's final decision,

the Court must grant judgment in favor of the Commissioner, even if substantial evidence also

supports the plaintiff's position. See Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d

Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject

those facts only if a reasonable factfinder would have to conclude otherwise.") (emphasis in

original) (citations and internal quotation marks omitted). Although deferential to an ALJ's

findings, a disability determination must be reversed or remanded if it contains legal error or is

not supported by "substantial evidence." See Rosa, 168 F.3d at 77.

## II.     Definition of Disability

A claimant is disabled under the Act if they demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1),

423(d)(1)(A). A "physical or mental impairment" is defined as "an impairment that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). A claimant will be

found to be disabled only if their "impairments are of such severity that [they are] not only

unable to do [their] previous work but cannot, considering [their] age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. § 423(d)(2)(A).

An ALJ must proceed through a five-step process to make a disability determination. See 20 C.F.R. § 404.1520. The steps are followed in order; if it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not progress to the next step. See id. The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183-84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)).

A claimant bears the burden of proof as to steps one, two, three, and four; the Commissioner bears the burden as to step five. Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013).

## III.    Analysis

### A.    The ALJ's Duty to Develop the Record

When the ALJ assesses a claimant's alleged disability, they, "unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508-09 (2d Cir. 2009)); Pratts v.

Chater, 94 F.3d 34, 37 (2d Cir. 1996) (confirming that the ALJ has an affirmative duty to develop the record, which "arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination"); see also 42 U.S.C. § 423(d)(5)(b), 20 C.F.R. § 404.1512(d). The Court, in turn, must make a "searching investigation of the record" to ensure that the claimant received "a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980) (quotations omitted). When the ALJ has failed to develop the record adequately, the Court must remand to the Commissioner for further development. See, e.g., Pratts, 94 F.3d at 39.

Under this duty, the ALJ must "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any source on a consultative basis." 42 U.S.C. § 423(d)(5)(B). See Devora v. Barnhart, 205 F. Supp. 2d 164, 174 (S.D.N.Y. 2002); Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991). A "reasonable effort" means that the ALJ "will make an initial request for evidence" from the claimant's medical source and make one follow up request between 10-20 calendar days after the initial one. 20 C.F.R. § 404.1512(b)(1)(i). "Where the ALJ fails to develop the record, remand is appropriate." Evans v. Comm'r of Soc. Sec., 110 F. Supp. 3d 518, 537 (S.D.N.Y. 2015). But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)). "[A]n ALJ is only required to recontact a treating

source if the records received were inadequate to determine whether Plaintiff was disabled."
Monroe v. Berryhill, No. 17-cv-3373 (ER)(HBP), 2018 WL 3912255, at *22 (S.D.N.Y. July 24,
2018) (quoting Quinn v. Colvin, 199 F. Supp. 3d 692, 709 (W.D.N.Y. 2016)) (cleaned up).

Where a claimant is unrepresented, "compliance with the minimum requirements of the
regulations is not always sufficient to satisfy the ALJ's heightened duty to develop the record."
Williams v. Barnhart, No. 05-cv-7503 (JCF), 2007 WL 924207, at *7 (S.D.N.Y. March 27,
2007) (collecting cases); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) ("[W]hen the claimant
is unrepresented, the ALJ is under a heightened duty 'to scrupulously and conscientiously probe
into, inquire of, and explore for all the relevant facts.'") (quoting Echevarria v. Sec'y of Health
and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)). Thus, with *pro se* claimants, "reasonable
efforts" to develop the record include "more than merely requesting reports from the treating
physicians. It includes issuing and enforcing subpoenas requiring the production of evidence, as
authorized by 42 U.S.C. § 405(d), and advising the plaintiff of the importance of the evidence."
Jones v. Apfel, 66 F. Supp. 2d 518, 524 (S.D.N.Y. 1999) (citation omitted) (remanding to
develop the record where the record lacked any report from the claimant's treating physician).
See also Rosa, 168 F.3d at 79. Further, the ALJ must "enter these attempts at evidentiary
development into the record." Jones, 66 F. Supp. 2d at 524.

Here, the medical evidence includes medical records from St. Joseph's Family Health
Center (May 1996 through October 2009), as well as WESTMED Medical Group (September
2016 through July 2019). R. 262-416, 417-548. Before the initial denial of DIB on September 12,
2019, a disability adjudicator contacted Jenkins and requested information about any additional
treating sources for the period before the DLI. R. 66. Jenkins provided the name of a Dr. Joseph
Napoli working in South Broadway Yonkers, but the adjudicator was unable to locate any such

person. Id. On November 29, 2019, before the denial on reconsideration, another adjudicator

called Jenkins to again request any additional medical sources that treated him before the DLI. R.

73. The adjudicator's notes state that "[Jenkins] does not remember any information about any

doctors from that long ago. . . . he only started getting treatment for Graves disease, his thyroid

condition in 2015. . . . [I] asked if he was treated for his depression prior to 2010 and he stated

that is more recent, like 2 or 3 years ago, and he was not treated by anyone prior to 2010." Id.

During the first hearing, once they had discussed Jenkins's cancer treatment at St.

Joseph's, the ALJ asked if he had any other issues after his colon operation. R. 48. Jenkins

responded "I have Graves' disease, now, I'm dealing with that . . . . [since] about two or three

years ago." Id. The ALJ then asked Jenkins about treating sources before his time with

WESTMED. Id. Jenkins responded that he "was going to a private, primary doctor, medical

doctor." R. 49. Jenkins stated that he saw this unnamed doctor because he was losing weight, but

that the doctor "wasn't getting to the bottom of the problem . . . [a]nd that's when I made the

switch [to WESTMED]." R. 48. The ALJ clarified that this doctor treated Jenkins before his care

at WESTMED, but after his care at St. Joseph's, to which Jenkins responded "I think I saw him .

. . months after that . . . that's way later on when I saw him." R. 50.

Jenkins now argues that the ALJ failed to adequately develop the medical record because

"only one attempt was made to obtain a full record from WestMed Medical Center. . . . there was

not any attempt to obtain records from any other facility. . . . [and] Mr. Jenkins [sic] medical

records noted that he was under treatment at Westchester Digestive disease group." Pl. Br. at 8.

Jenkins cites no authority in support of this argument beyond Social Security Ruling ("SSR") 17-

4p (itself merely repeating the relevant portion of the C.F.R.), which states that "every

reasonable effort means that we will make an initial request for evidence from the medical

source or entity that maintains the medical evidence, and . . . if the evidence has not been received, we will make a follow-up request . . . ." See also 20 C.F.R. § 404.1512(b)(1)(i).

Proceeding through Jenkins's contentions in order, § 404.1512(b)(1)(i) makes clear that when developing a medical record, the ALJ is under no obligation to make subsequent requests for information *that has already been received*. In addition, records—arguably the only ones relevant to this appeal—were in fact obtained from another facility, St. Joseph's. Finally, while it is true that the WESTMED records referenced treatment at Westchester Digestive, they note only that he had a colonoscopy there in 2016 ("which was normal"), and Jenkins gives no explanation as to how that might relate to the impairments alleged for the relevant period ("Graves' disease; thyroid condition; depression"). R. 419, 64.

The record indicates that Jenkins was not diagnosed with Graves' disease[1] until 2015 at the earliest and did not receive treatment for depression until October of 2019. R. 73, 552. Jenkins's motion contains no argument that these impairments existed during the relevant period between the AOD and the DLI, five or more years prior. And this is consistent with what records *are* present from that period and the months leading up to it, which reflect that Jenkins was regularly visiting providers at St. Joseph's and "generally well." R. 345-64. Thus, lacking any indication from Jenkins in this motion or anywhere in the record, the Court is left to guess at what evidence could possibly be missing. See Soc. Sec. Ruling 17-4p at *1-2 ("Although we take a role in developing the evidentiary record in disability claims, claimants . . . have the primary responsibility . . . we expect claimants and their representatives to make good faith efforts to

---

[1] Graves' disease "is an autoimmune disorder that can cause hyperthyroidism." Graves' Disease, Nat'l Inst. Health, https://www.niddk.nih.gov/health-information/endocrine-diseases/graves-disease (last visited September 12, 2022).

ensure we receive complete evidence. . . . Our statutory responsibilities . . . do[] not, however, reduce the claimant's responsibilities in any way.").

Although unraised in Jenkins's motion, there is the matter of the unnamed physician discussed at the ALJ hearing. R. 49. But Jenkins's testimony indicated that he saw that doctor "way later" after his treatment at St. Joseph's, shortly before he switched to WESTMED circa 2016. R. 48-50 ("I was losing weight . . . I was going to a previous doctor . . . he wasn't getting to the bottom of the problem . . . that's when I made the switch."). Jenkins does not claim to have seen this doctor during the relevant period in 2009-2010, nor does he argue that records from his treatment with this doctor would shed any light on his ability to work during that period.

Given the foregoing, there are no obvious gaps in the administrative record, and the ALJ appears to have obtained a complete medical history for the relevant period. Even under the heightened duty owed to *pro* se claimants, the ALJ could not be expected to seek out and subpoena records he had no reason to believe existed. See Jones, 66 F. Supp. 2d at 524. Therefore, the ALJ was under no obligation to seek additional information before rejecting Jenkins's claim and fulfilled his duty to develop the record. See Rosa, 168 F.3d 79 n.5.

**B.       The ALJ's Determination at Step Two**

Jenkins also alleges that the ALJ erred in not finding a severe impairment of the foot, because "examination found heel and arch pain . . . [and] reduced sensation in bilateral foot, pain along the medical [sic] band of the plantar fascia and pain at the area consistent with the medial plantar calcaneal tuberosity." Pl. Br. at 8. Jenkins does not cite to the record, but appears to be referencing notes from a podiatric visit on July 19, 2019, nearly nine years after the DLI. R. 418-24.

To the extent that this may be construed as a claim that the ALJ's finding at step two was not supported by substantial evidence, the notes from that visit (in addition to being well outside the relevant period) indicate relatively mild symptoms and a conservative course of treatment involving stretches, custom orthotics, and ibuprofen. Id. These records do not establish an impairment that would significantly limit Jenkins's ability to perform basic work-related activities for 12 consecutive months. See 20 C.F.R. § 404.1520(c).

The claimant bears the burden of proof at steps one through four, including establishing a severe impairment at step two. Selian, 708 F.3d at 418. There is no evidence in the record, and Jenkins offers none now, that these impairments of the foot were both present and severe during the relevant period. And while the ALJ *did* identify foot calluses as an impairment present during the relevant period (despite Jenkins not claiming disability for that reason), his conclusion that they lacked "more than a minimal effect on [Jenkins's] ability to perform work-related activities" was supported by substantial evidence. See R. 340-58 (treatment records from St. Joseph's, including treatment of Jenkins's foot issues circa 2007-2009).

C.    SSR 96-8p

Jenkins's final argument is that, by failing to account for the effect the aforementioned foot issues had on his ability to work, the ALJ failed to comply with SSR 96-8p. Pl. Br. at 9-10. This argument is unavailing because, as explained above, those issues were not identified until 2019, and there is no evidence in the record (nor even argument made now) that they existed during the relevant period between the AOD and DLI.

Further, Jenkins's reliance on 96-8p is misplaced. That ruling concerns the manner in which ALJs must conduct their Residual Functional Capacity ("RFC") analysis. The portion cited by Jenkins requires an ALJ assessing RFC to consider the effect impairments, severe and

non-severe alike, have on a claimant's ability to work. It explains that while a non-severe

impairment may not in isolation significantly limit an individual's ability to work, it may "when

considered with limitations or restrictions due to other impairments—be critical to the outcome

of a claim." SSR 96-8p. In other words, while a non-severe impairment alone may not carry a

claim beyond step two, it should be considered alongside severe impairments in determining a

claimant's RFC.

Because the ALJ found no severe impairments at all, and thus ended his analysis at step

two, he did not assess Jenkins's RFC. Therefore, both SSR 96-8p and the evidence to be

considered when assessing RFC are irrelevant to this appeal.

## CONCLUSION

A thorough investigation of the record has shown that the ALJ's finding that Jenkins did

not have a severe impairment and was thus not disabled during the relevant period between the

AOD and DLI is free from legal error and supported by substantial evidence. Jenkins's motion is

DENIED, and the Commissioner's motion is GRANTED. The action is DISMISSED with

prejudice. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 10

and 15.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge


DATED:        September 12, 2022
              New York, New York